IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION FILE NO. |
| v. | 1:18-CR-201-LMM-JKL-1 |
| KINSLEY KILPATRICK | |

## ORDER AND FINAL REPORT AND RECOMMENDATION

On September 4, 2018, a grand jury seated in the Northern District of Georgia returned a superseding indictment charging Defendant Kinsley Kilpatrick and his wife, Defendant Tracie Kilpatrick, in connection with an alleged scheme to fraudulently obtain disability benefits from the Department of Veterans Affairs (the "VA") and the Social Security Administration (the "SSA").  [Doc. 37.]  The charges arise out of a VA investigation that purportedly revealed that Defendants embellished Mr. Kilpatrick's physical limitations to obtain VA and SSA disability benefits.  Defendants are jointly charged with one count of mail fraud conspiracy to defraud the VA, 18 U.S.C. § 1349; two corresponding substantive counts of mail fraud, 18 U.S.C. § 1341; one count of mail fraud conspiracy to defraud the SSA, 18 U.S.C. § 1349; and one corresponding substantive count of mail fraud, 18 U.S.C.

§ 1341. The Kilpatricks are also each charged separately with making false statements in forms they allegedly submitted to the SSA, 18 U.S.C. § 1001.

This Order and Report and Recommendation addresses Defendant Kinsley Kilpatrick's Preliminary Motion to Suppress Evidence [Doc. 23] and Amended Motion to Suppress Evidence [Doc. 35], in which he moves to suppress VA health records seized by the government without a warrant and an audio/video recording of a physical examination with VA physician Dr. Jacqueline Rosenthal. This decision also addresses the government's motion to strike an amended reply brief that Mr. Kilpatrick filed late. [Doc. 60.] For the reasons that follow, it is **RECOMMENDED** that the motion to suppress be **DENIED**, and it is **ORDERED** that the motion to strike be **DENIED**.[1]

---

[1] Also pending before the Court is Mr. Kilpatrick's "Preliminary Motion to [Dismiss] Counts of the Indictment" in which he moves to dismiss certain counts of the original indictment in this case for conspiracy to commit wire fraud and substantive counts of wire fraud. [Doc. 24.] The Court ordered Mr. Kilpatrick to perfect his motion by August 22, 2018; however, he did not do so. In any event, the superseding indictment does not contain any counts of wire fraud conspiracy or substantive counts of wire fraud. Accordingly, the motion to dismiss is **DEEMED WITHDRAWN**.

## I.     Background

On October 11, 2017, Mr. Kilpatrick underwent a physical examination with Dr. Rosenthal at the VA Medical Center.  [Doc. 35 at 2.]  Ms. Kilpatrick also attended the encounter.   Unbeknownst to the Kilpatricks, Special Agent Tracy Brumfield, an agent with the VA's Office of Inspector General ("VA-OIG"), had obtained consent from Dr. Rosenthal to record the examination, and the examination was, in fact, recorded.  [Doc. 35 at 2; Doc. 36 at 2; Doc. 60-1; Doc. 60-2.]  As part of the VA-OIG investigation, SA Brumfield also interviewed other VA physicians who examined or treated Mr. Kilpatrick and the VA ratings quality review specialist who assessed Mr. Kilpatrick's disability rating.  [Doc. 35 at 2; Doc. 36 at 2.]  SA Brumfield also accessed Mr. Kilpatrick's VA medical records. [Doc. 35 at 2; Doc. 36 at 2.]

Mr. Kilpatrick moves to suppress (1) the recording of the October 11, 2017 examination; (2) information that law enforcement obtained through interviews with Mr. Kilpatrick's medical providers at the VA; and (3) VA medical records that the government obtained.  [Doc. 35.]  Mr. Kilpatrick argues that he had a privacy interest in his medical and health information under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), and, therefore, the government should have obtained all the foregoing information through a warrant.

3

[*Id.* at 3-5.]  With respect to the recording, Mr. Kilpatrick further argues that law enforcement was prohibited from surreptitiously recording his encounter with Dr. Rosenthal under a Georgia law that prohibits the recording of private activities of other persons.  [*Id.* at 5-6 (citing O.C.G.A. §§ 16-11-62(2), 16-11-64, 16-11-66).]

The government responds that SA Brumfield could lawfully access Mr. Kilpatrick's VA medical records without a warrant or any other formal legal process because the records were records of the VA and, as a special agent with the VA-OIG, SA Brumfield could lawfully access the medical records as part of his investigation in the fraud and abuse in VA programs.  [Doc. 36 at 3.]  The government alternatively argues that, even if some legal process were required to obtain Mr. Kilpatrick's medical records, the government could have obtained the information by way of a subpoena because there is no statute that would have required the government to obtain the records pursuant to a search warrant.  [*Id.* at 4.]

The government also argues that no HIPAA violation occurred because a law enforcement exception to the law authorizes the government to obtain otherwise protected information.  [Doc. 36 at 4-5.]  In the alternative, the

government argues that, even if Mr. Kilpatrick could show that a HIPAA violation occurred, suppression is not the appropriate remedy.  [*Id.*]

Finally, with respect to the video recording, the government responds that federal law controls.  [Doc. 36 at 6-7.]  Under federal law, the government contends, a person acting under color of law may record a communication (including by video) where such person is a party to the communication or where one of the parties has given consent.  Here, Dr. Rosenthal gave consent to the recording of the examination; thus, the recording was lawful.  [*Id.*]

**II.    Analysis**

    **A.    A warrant was not necessary for law enforcement to interview physicians or obtain VA medical records.**

In 1978, due to a concern that fraud and abuse in federal programs was "reaching epidemic proportions," Congress enacted the Inspector General Act of 1978, which created offices of inspectors general in several governmental departments, including the VA, "to more effectively combat fraud, abuse, waste and mismanagement in the programs and operations of those departments and agencies."  *Inspector Gen. of U.S. Dep't of Agric. v. Glenn*, 122 F.3d 1007, 1009 (11th Cir. 1997) (citations to Senate report omitted); *see also* 5 U.S.C. app. 3 §§ 1-12.  The duties of inspectors general include, among other things, conducting

"audits and investigations relating to the programs and operations" of the specific government agency.  5 U.S.C. app. 3 § 4(a)(1).  To that end, the Act vests inspectors general with investigative tools, including "access to all records, reports, audits, reviews, documents, papers, recommendations, or other materials available to the [agency] which relate to [the agency's] programs and operations . . . ."  5 U.S.C. app. 3 § 6(a)(1).  The Act additionally requires inspectors general to "report expeditiously to the Attorney General whenever the Inspector General has reasonable grounds to believe there has been a violation of Federal criminal law." 5 U.S.C. app. 3 § 4(d).

Here, the Court readily concludes that Mr. Kilpatrick's medical records qualify as records of the VA that relate to the program and operations of the agency. As such, SA Brumfield was statutorily authorized to access Mr. Kilpatrick's VA medical records without additional legal process.  Though Mr. Kilpatrick asserts that he had an expectation of privacy with respect to those records, he cites no authority to support his contention that the VA-OIG was required to get a warrant

to inspect or obtain the VA's own patient records when investigating fraud, waste or abuse within the agency.[2]

Mr. Kilpatrick's reliance on HIPAA is also misplaced. HIPAA permits a "covered entity" to "disclose to a law enforcement official protected health information that the covered entity believes in good faith constitutes evidence of criminal conduct that occurred on the premises of the covered entity." 45 C.F.R. § 164.512(f)(5). Covered entities include a "health plan," a "health care clearinghouse," and a "health care provider who transmits any health information in electronic form in connection with a transaction" that HIPAA covers. *Id.* § 164.104(a). It is not clear at what point in the investigation Mr. Kilpatrick contends that HIPAA was violated, as he simply asserts that the "Government" violated the act when it obtained his medical records. [Doc. 35 at 5.] Presuming that Mr.

_____

[2] Mr. Kilpatrick cites *Roe v. Wade*, 410 U.S. 113 (1973), *Whalen v. Roe*, 429 U.S. 589 (1977), *Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425 (1977), and *NASA v. Nelson*, 562 U.S. 134 (2011), to support his assertion that he has a personal privacy interest in his medical records. Those cases are inapposite, however, as none involved the reasonableness of searches under the Fourth Amendment. [*See* Doc. 35 at 4.] Likewise, none of the Fourth Amendment cases Mr. Kilpatrick cites recognizes that the government must obtain a warrant before accessing or obtaining medical records that are already lawfully within the possession of a government agency. [*See id.* at 4-5 (citing *Katz v. United States*, 389 U.S. 347 (1967) and *United States v. Berrong*, 712 F.2d 1370 (11th Cir. 1983)).]

7

Kilpatrick means to refer to VA-OIG's or the Department of Justice's obtaining of the medical records in connection with the investigation and prosecution of this case, HIPAA has no application because neither VA-OIG nor the Department of Justice qualifies as a covered entity under HIPAA. *See United States v. Prentic*e, 683 F. Supp. 2d 991, 1001 (D. Minn. 2010) ("[A] law enforcement agency is not a covered entity, subject to the restraints on the use or receipt of protected medial information."); *United States v. Elliott,* 676 F.Supp.2d 431, 440 (D. Md. 2009) ("Law enforcement agencies, including the office of the prosecuting attorney, are not covered entities under [HIPAA]").  Even so, assuming *arguendo* that the "Government" somehow violated HIPAA by providing access to patient records to VA-OIG, the Court agrees with the government that Mr. Kilpatrick has not shown that suppression would be an appropriate remedy.  *See United States v. Gibbs*, No. 2:17-CR-005-RWS-JCF, 2018 WL 1916627, at *2 (N.D. Ga. Mar. 14, 2018), *report and recommendation adopted*, 2018 WL 1915080 (N.D. Ga. Apr. 23, 2018); *see also United States v. Andrews*, No. 1:12CR100-1, 2014 WL 1663369, at *4 (N.D. W. Va. Apr. 23, 2014) (collecting cases and recognizing that "the weight of authority suggests that suppression is not the appropriate remedy for evidence obtained in violation of HIPAA").

8

Finally, with respect to interviews that law enforcement conducted of Mr. Kilpatrick's medical providers at the VA, the Court sees no basis to suppress information garnered from those individuals. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Mr. Kilpatrick cites no authority to support his contention that interviewing a witness amounts to a search or seizure implicating the Fourth Amendment.

**B. Dr. Rosenthal's recording of the encounter with Mr. Kilpatrick is not subject to suppression.**

**1. Mr. Kilpatrick's request for evidentiary hearing**

Before discussing the merits of Mr. Kilpatrick's arguments relating to the recording of his examination with Dr. Rosenthal, the Court first addresses Mr. Kilpatrick's request for an evidentiary hearing as to the validity of Dr. Rosenthal's consent. For the following reasons, the Court denies the request.

On October 10, 2018, the Court held a pretrial conference in this case following Mr. Kilpatrick's arraignment on the superseding indictment. At the conference, counsel for Mr. Kilpatrick requested leave of court to file a reply to the Government's response to his motion to suppress, which the government had filed on September 7, 2018. The Court granted Defendant's request and directed him to

file his reply by Wednesday, October 17, 2018.  Mr. Kilpatrick did not file anything by the deadline.  The following day, his counsel orally moved for an extension of time to file his reply.  The Court granted the request and allowed him to file his reply no later than 4:30 pm on October 19, 2018. [Doc. 56.]  Mr. Kilpatrick again missed the deadline, filing a reply on Saturday, October 20, 2018.  [Doc. 57.]

In his reply, Mr. Kilpatrick argued, among other things, that the Government had not produced sufficient evidence to show that Dr. Rosenthal had consented to the recording.  [Doc. 57 at 4-5.]  He asked for the Court to hold an evidentiary hearing "for the purpose of receiving evidence on whether and under what circumstances Dr. Rosenthal provided consent for the recording of her examination and patient visit with Mr. Kilpatrick."  [*Id.* at 5.]  Mr. Kilpatrick had not, however, challenged the validity of the consent in his initial motion to suppress or any other pretrial motion.   Indeed, in his motion to suppress he acknowledged that "[d]iscovery materials indicate that Dr. Rosenthal consented to the recording" and focused his argument entirely on *his* lack of consent, not Dr. Rosenthal's.  [Doc. 35 at 2, 5; *see also id.* at 6 (assuming that Dr. Rosenthal consented to the recording).]  Because Mr. Kilpatrick raised a new issue on reply, and because Mr. Kilpatrick alleged no facts that suggested Dr. Rosenthal's consent was invalid, the

10

Court directed his counsel to perfect his motion to address the consent issue by 4:30 pm on Friday October 26, 2018.  The Court explicitly warned counsel that it would not consider anything filed after that time.

Defendant did not meet that deadline either.  Rather, Mr. Kilpatrick filed his perfected motion at 8:20 pm on October 26, 2018, nearly four hours after the Court's deadline.  In his perfected reply brief, Mr. Kilpatrick offered no additional allegations that suggested Dr. Rosenthal's consent was invalid.  In fact, Mr. Kilpatrick stated that Dr. Rosenthal refused to speak with his counsel or his investigator about the recording.  [Doc. 59 at 5.]  Mr. Kilpatrick thus submits that an evidentiary hearing is needed "to receive evidence from [Dr.] Rosenthal on whether and under what circumstances she consented to the recording of her October 11 meeting with Kinsley Kilpatrick and interview of him."  [*Id.*]

On October 29, 2018, the government filed a motion to strike the amended reply brief as untimely.  [Doc. 60.]  The government alternatively requested that the Court deny Mr. Kilpatrick's request for an evidentiary hearing.  [*Id.* at 5.]  The government argues that the record establishes that Dr. Rosenthal consented to the recording, and in support, cites a memorandum from SA Brumfield dated October 24, 2017.  [*Id.*]  That report details the surveillance operation conducted on October

11

11, 2017, and specifically states that "the examination was consensually monitored by this agency, and Dr. Rosenthal served as the consenting party." [Doc. 60-1 at 1.] The government also has submitted a copy signed a statement in which Dr. Rosenthal gave SA Brumfield permission to monitor and/or record her conversations with Mr. Kilpatrick. [Doc. 60-2.] The government maintains that it has shown that Dr. Rosenthal consented to the recording of the exam, and therefore, his request for a hearing and his motion to suppress the recording should be denied. [Doc. 60 at 5.]

The Court directed expedited briefing, and on October 31, 2018, Mr. Kilpatrick timely responded to the government's motion to strike. [Doc. 62.] His counsel represents that he tried valiantly to meet the deadline to file the perfected reply brief but was unable to do so due his workload. [*Id.* at 2-3.] As to the substance of the government's motion, he argues that he has never conceded the validity of Dr. Rosenthal's consent. [*Id.* at 4-5.] He also stresses that his own efforts to investigate the issue of consent have been impeded by Dr. Rosenthal's unwillingness to speak with him. [*Id.* at 5.] As a result, Mr. Kilpatrick contends, "a formal court proceeding will be necessary for the Defense and the Court to

receive the information sought concerning the circumstances of Dr. Rosenthal's alleged consent."  [*Id.*]

The Court declines to strike or disregard the amended reply.  While the Court in no way condones the tardy filing of briefs, the Court accepts counsel at his word that his late filing was not intentional or done in bad faith.  Nonetheless, the Court cannot conclude that Mr. Kilpatrick is entitled to an evidentiary hearing regarding Dr. Rosenthal's consent.  Assuming that Mr. Kilpatrick even has standing to challenge Dr. Rosenthal's consent, he has failed to demonstrate a genuine factual dispute that would require a hearing.  "[W]here a defendant in a motion to suppress fails to allege facts that if proved would require the grant of relief, the law does not require that the district court hold a hearing independent of the trial to receive evidence on any issue necessary to the determination of the motion."  *United States v. Cooper*, 203 F.3d 1279, 1285 (11th Cir. 2000) (alteration in original) (quoting *United States v. Sneed*, 732 F.2d 886, 888 (11th Cir. 1984)).  "'A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented . . . .  A court need not act upon general or conclusory assertions . . . .'"  *Id*. at 1284 (alterations in original) (quoting *United States v. Richardson*, 764 F.2d

13

1514, 1527 (11th Cir.1985)).  Moreover, "[t]he law does not entitle a defendant to an evidentiary hearing based on a 'promise' to prove at the hearing that which he did not specifically allege in the motion to suppress."  *United States v. Leiva-Portillo*, No. 1:06-CR-350-WSD, 2007 WL 1706351, at *8 (N.D. Ga. June 12, 2007).

Mr. Kilpatrick's amended reply brief indicates that his counsel or an investigator contacted Dr. Rosenthal, but neither Dr. Rosenthal nor her supervisor would provide any information about the consent issue.  [Doc. 59 at 5.]  Thus, Mr. Kilpatrick has been unsuccessful in investigating the circumstances of Dr. Rosenthal's consent.  [*Id.*]  But this does not change the fact that Mr. Kilpatrick not proffered any allegations that, if proven, would provide a basis for relief.  Instead, he demands an evidentiary hearing just so counsel can explore the issue of consent.  But "[a] defendant is not entitled to an evidentiary theory on the grounds that 'we'll see what turns up.'"  *See United States v. Villaverde-Leyva*, No. 1:10-CR-035-RWS-AJB, 2010 WL 5579825, at *16 (N.D. Ga. Dec. 9, 2010), *report and recommendation adopted*, 2011 WL 121932 (N.D. Ga. Jan. 14, 2011).  Accordingly, the Court **DENIES** the request for an evidentiary hearing.

14

**2.** **The recording of Mr. Kilpatrick's examination should not be suppressed because Dr. Rosenthal consented to the recording.**

Mr. Kilpatrick argues that the recording of his examination with Dr. Rosenthal should be suppressed because the recording was made in violation of a Georgia anti-eavesdropping statute, O.C.G.A. § 16-11-62. That statute makes it unlawful for "[a]ny person, through the use of any device, without the consent of all persons observed, to observe, photograph, or record the activities of another which occur in any private place and out of public view[.]" O.C.G.A. § 16-11-62(2). Mr. Kilpatrick maintains that his encounter with Dr. Rosenthal was in a private place and out of public view and, therefore, the consent of all persons observed was necessary. Since he and his wife did not agree to be recorded, Mr. Kilpatrick maintains, the recording should be suppressed. The Court disagrees for the simple reason that O.C.G.A. § 16-11-62(2) has no bearing on the admissibility of the recording in this case because "federal law governs the admissibility of tape recordings in federal criminal cases, and complaints that the evidence was obtained in violation of state law are of no effect." *United States v. Brazel*, 102 F.3d 1120, 1154 (11th Cir. 1997) (quotation omitted); *see also United States v. Hill*, No. CR 114-028, 2014 WL 5410214, at *3 (S.D. Ga. Oct. 23, 2014), *adopted, id.* at *1.

15

Thus, it is immaterial whether or not the recording complied with Georgia's anti-eavesdropping law.

Nor was there a violation of federal law when Dr. Rosenthal surreptitiously recorded the examination.  Under federal law, a person acting under color of law may lawfully "intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."  18 U.S.C. § 2511(2)(c).  Moreover, a "defendant has no justifiable expectation of privacy when he speaks with someone acting as a government informant, and is unaware that a recording device is concealed in the room."  *United States v. Laetivial-Gonzalez*, 939 F.2d 1455, 1460-61 (11th Cir.1991), *overruled on other grounds by United States v. Giltner*, 972 F.2d 1563 (11th Cir.1992); *see also United States v. Yonn*, 702 F.2d 1341, 1347 (11th Cir. 1983).  As long as one of the parties to the conversation knows of and consents to the recording, there is no Fourth Amendment violation.  *See Cass v. United States*, No. 1:07-cr-035, 2012 WL 1642045 (N.D. Ala. May 7, 2012) (citing *United States v. Whit*e, 401 U.S. 745, 751-53 (1971)).  Here, Dr. Rosenthal was cooperating with the VA-OIG investigation and consented to the recording.  [*See* Docs. 60-1, 60-2.]  In particular, Dr. Rosenthal signed a form entitled "Consent to

Monitor Conversations," in which she explicitly authorized SA Brumfield to "monitor and/or record [her] conversations" with Mr. Kilpatrick in connection with the investigation.  [Doc. 60-2.]  Dr. Rosenthal also acknowledged that she gave "written permission to [SA Brumfield] voluntarily and without threats or promises of any kind being made to [her]."  [*Id.*]  Because Dr. Rosenthal consented to a recording of the encounter, Mr. Kilpatrick's motion to suppress should be denied.

### III.   Conclusion

For the foregoing reasons, it is **RECOMMENDED** that Defendant Kinsley Kilpatrick's Preliminary Motion to Suppress Evidence [Doc. 23] and Amended Motion to Suppress Evidence [Doc. 35] be **DENIED**.

In addition, because Mr. Kilpatrick's Preliminary Motion to [Dismiss] Counts of the Indictment [Doc. 24] was withdrawn, the Clerk is **DIRECTED** to **TERMINATE** that motion.

It is further **ORDERED** that the government's Motion to Strike Defendant's Amended Reply in Support of his Amended Motion to Suppress Evidence [Doc. 60] be **DENIED**.

I have now addressed all referred pretrial matters and have not been advised of any impediments to the scheduling of a trial. Accordingly, this case is **CERTIFIED READY FOR TRIAL**.

17

IT IS SO RECOMMENDED this 1st day of November 2018.

JOHN K. LARKINS III
United States Magistrate Judge